# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVERETT GALINDO GONZALEZ, | Case No. 1:09-cv-01284-DAD-SKO (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS TO GRANT DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS |
| v. | |
| DERRAL G. ADAMS, et al., | (Doc. 84) |
| Defendants. | THIRTY (30) DAY OBJECTON DEADLINE |

## I. Procedural History

Plaintiff Everett Galindo Gonzalez, a state prisoner proceeding *pro se* and *in forma pauperis*, filed in this civil rights action pursuant to 42 U.S.C. § 1983 on July 23, 2009. Following the decision by the United States Court of Appeals for the Ninth Circuit on March 19, 2015, this action for damages is proceeding on Plaintiff's Third Amended Complaint ("TAC") (Doc.21), limited to Plaintiff's due process claim arising out of his 2007 re-validation.

On July 22, 2015, Defendants Espinoza, Lunes, Rodriguez, Ruff, Fischer, and Roman ("Defendants") filed a motion for judgment on the pleadings asserting that they are entitled to qualified immunity. (Doc. 84.) Plaintiff filed his opposition on August 26, 2015 to which Defendants replied on September 2, 2015. (Docs. 88-90.) The motion has been deemed submitted. Local Rule 230(l). For the reasons discussed herein, in 2007 it was not clearly established that a lengthy confinement without meaningful review constituted an atypical and significant hardship such that Defendants are entitled to qualified immunity and it is recommended

that their motion for judgment on the pleadings be GRANTED.

## II.  Judgment on the Pleadings -- Legal Standards

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).

Procedurally, if ". . . matters outside the pleadings are presented to and not excluded by the court, the motion should be treated as one for summary judgment under Rule 56," and "all parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).

Substantively, "[a]nalysis under Rule 12(c) is substantially identical to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy."  *Pit River Tribe v. Bureau of Land Management*, 793 F.3d 1147, 1155 (9th Cir. 2015) quoting *Chavez v. U.S.*, 683 F.3d 1102, 1108 (9th Cir. 2012) (citation and internal quotation marks omitted in *Pit River Tribe*). The Court "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party."  *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

On a motion to dismiss under Rule 12(b)(6), a court must assess whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "  *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955 (2007)).  Mere conclusory statements in a complaint and "formulaic recitation[s] of the elements of a cause of action" are not sufficient.  *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955.  Thus, a court discounts conclusory statements, which are not entitled to the presumption of truth, before determining whether a claim is plausible.  *Chavez*, 683 F.3d at 1108-09 (citing *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937.)  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal,* 556 U.S. at 678.

"Judgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law."  *Fleming,* 581 F.3d at 925.

### III. **Plaintiff's Allegations in the TAC**

By way of background, Plaintiff was initially validated as an associate of the Mexican Mafia ("EME") prison gang in 2000 at High Desert State Prison in Susanville, which resulted in an indeterminate term in the secured housing unit ("SHU") which he was transferred to Corcoran to serve in 2001. He was re-validated at the six year inactive review in 2006. Plaintiff initially made allegations against various prison officials for these incidents. Following dismissal on statute of limitations grounds, Plaintiff appealed and is now proceeding on his allegations in the TAC of events pertaining to his continued SHU confinement and continued validation that occurred in 2007 (*See* Doc. 70, 9th Cir. Memo, pp. 2-3; Doc. 21, TAC, pp. 24-26, ¶¶ 60-66) against Defendants Ruff, Fisher, Roman, Lunes, Espinosa, and Rodriguez.

Plaintiff alleges that in 2006, when he was revalidated as a gang associate, he submitted a five page written rebuttal challenging the source items relied on which he believes were fabricated in response to his challenge to SHU retention via inmate appeals. (Doc. 21, at ¶¶ 42-48.) On November 1, 2006, Plaintiff alleges that he was interviewed by Defendants Lunes and Espinosa where they read a summary of a report for item #1 (regarding visits Plaintiff received in the first months of 2006 where he allegedly passed information for the EME, but when he was only visited by his parents) to which Plaintiff objected; they indicated they would investigate further. (*Id.*, at ¶ 49.) When Defendants read the summary of item #2 (from an unnamed informant implicating Plaintiff's participation in EME daily "roll call") Plaintiff again objected and demanded a specific date of any such activity; Defendants replied that there was no specific date and they would investigate it. (*Id.*, at ¶ 52.) Plaintiff alleges that if Defendants Lunes, Espinosa, and Rodriguez correctly performed their job, they would have found that both item #1 and #2 were false, unsubstantiated, and unreliable. (*Id.*, at ¶¶ 51, 53.) This interview concluded with Defendants Lunes and Espinosa stating they would review Plaintiff's five-page rebuttal and look into Plaintiff's objections. (*Id.*, at ¶ 54.)

On November 3, 2006, Defendant Espinosa told Plaintiff that the allegations in item #1 were found to be unsupported and had been removed, but handed Plaintiff a revised form which presented item #2 as based on instances that occurred in March of 2006 which led Plaintiff to

3

1  believe they did not investigate his objections to item #2.  (*Id.*, at ¶ 55.)  A few days later,
2  Defendant Espinosa submitted a package indicating that Plaintiff's gang status should be
3  continued.  (*Id.*, at ¶ 56.)  In the middle of that month, Institutional Gang Investigator ("IGI") Lt.
4  James Cronger submitted that package without first ensuring that Plaintiff was provided the
5  process he was due.  (*Id.*, at ¶ 57.)
6        Plaintiff believes that "roll call" activity has been found insufficient and unreliable for
7  validation of other inmates and on November 10, 2006, he submitted a grievance challenging his
8  revalidation and the sufficiency of the evidence used against him which was denied at all levels.
9  (*Id.*, at ¶ 59.)  Plaintiff's claims for the events that occurred in 2006 and earlier have been
10 dismissed and are not at issue, but provide the basis upon which Plaintiff's allegations in 2007
11 must be viewed.
12       Plaintiff alleges that, the next event pertaining to his revalidation occurred on April 16,
13 2007, when Defendants Ruff, Fisher, and Roman confirmed Plaintiff's gang associate revalidation
14 and noted that source items 1 and 2 met the validation requirements.  (Doc. 21, at ¶ 60.)  Plaintiff
15 alleges that as the final decision makers, Defendants Ruff, Fisher, and Roman were required, but
16 failed, to investigate the accuracy of the source items, and to ensure that he received all the
17 process he was due and that applicable regulations were complied with.  (*Id.*, at ¶ 61.)
18       On July 19, 2007, Plaintiff appeared before the Institutional Classification Committee
19 ("ICC") for an annual SHU review.  (*Id.*, at ¶ 62.)  Plaintiff denied any EME gang involvement
20 and requested permission to address the committee regarding the source items; to have a
21 meaningful review of the evidence; to be informed of all the evidence associated with the source
22 items; to meet with IGI to refute the evidence; and to be afforded all the procedural protections he
23 was due.  (*Id.*)  The ICC denied Plaintiff's requests and imposed another indeterminate SHU term.
24 (*Id.*)  When Plaintiff reported his basic issues with his validation, the chairperson stated that
25 Plaintiff's inmate appeal, in which he challenged the review and sufficiency of the evidence used
26 at his six year inactive review (which found him to still be an associate of the EME) had
27 previously been reviewed and denied.  (*Id.*, at ¶ 63.)
28       On September 17, 2007, Plaintiff's case was referred to the Classification Services

Representative (CSR) for endorsement of the indeterminate SHU term which was assessed on July 19, 2007. The CSR deferred a decision based on his inability to find the California Department of Corrections and Rehabilitation ("CDCR") form 1030s dated September 6, 2006 and September 14, 2006 (confidential memoranda drafted by Defendant Espinosa and another officer). Plaintiff alleges that "these items were manipulated as a result of" inmate appeals he filed challenging his SHU retention. (*Id*., at ¶64.)

On October 18, 2007, Plaintiff appeared before the ICC, which included Defendant Rodriguez, for a 180-day review. Plaintiff was informed that the July 19, 2007, ICC review did not count because the source items used in his revalidation were not in his central file at the time. Plaintiff asked on what the previous review decision was based if the evidence had not been in his central file and what Defendants Lunes, Espinosa, and Rodriguez had "conjure[d]" up. (*Id*., at ¶65.) The ICC refused to respond and Plaintiff again asked for a meaningful review of the evidence, a meaningful investigation, and an opportunity to be heard. Defendant Rodriguez denied his requests and told him that OCS had validated Plaintiff, which was good enough for Rodriguez. (*Id.*) The ICC then imposed an indeterminate SHU term which was endorsed by the CSR on December 5, 2007. (*Id.*, at ¶ 66.)

Thus, Plaintiff is proceeding on allegations that do not pertain to his initial indeterminate SHU term when he was validated as an associate of the EME in 2000, but rather on events that allegedly occurred in 2007 in objection to his 2006 revalidation which continued his indeterminate SHU term.

**IV.   Qualified Immunity**

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Qualified immunity, requires two prongs of inquiry: "(1) whether 'the facts alleged show the official's conduct violated a constitutional right; and (2) if so, whether the right was clearly established' as of the date of the involved events 'in light of the specific context of the case.' " *Tarabochia v. Adkins*, 766 F.3d 1115, 1121 (9th Cir. 2014) quoting *Robinson v. York*, 566 F.3d

817, 821 (9th Cir.2009).  These prongs need not be addressed by the Court in any particular order. *Pearson v. Callahan* 555 U.S. 223 (2009).

      In determining whether a government official should be granted qualified immunity, the facts are to be viewed "in the light most favorable to the injured party." *Chappell v. Mandeville*, 706 F.3d 1052, 1058 (9th Cir. 2013) quoting *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151 (2001), *receded from on other grounds by Pearson*, 355 U.S. at 817–21; *see also Bryan v. MacPherson*, 630 F.3d 805, 817 (9th Cir.2010).  "[A] 'robust consensus of cases of persuasive authority' " in the Courts of Appeals could establish the federal right [in question]." *City and County of San Francisco v. Sheehan,* 575 U. S. ___, ___ (2015) (slip op., at 16).

## V. **Clearly Established Law**

      In order to evaluate Defendants' qualified immunity claims, it must be determined whether Plaintiff's due process right challenging revalidation and continuing indeterminate SHU placement was clearly established in 2007.

      In the 1980s and 1990s, following an inmate's initial placement in administrative segregation, due process was satisfied if the decision to segregate the inmate was reviewed by prison officials every 120 days. *Toussaint v. McCarthy*, 926 F.2d 800, 803 (9th Cir.1990), cert. denied 502 U.S. 874 (1991).  Prison officials were only required to engage in some sort of periodic review of an inmate's SHU confinement. *Hewitt*, 459 U.S. at 477 n. 9, overruled on other grounds by *Sandin v. Conner*, 515 U.S. 472 (1995); *Toussaint*, 801 F.2d at 1101, abrogated in part on other grounds by *Sandin*; which needed only amount to more than "meaningless gestures," *Toussaint*, 801 F.2d at 1102.  Further, there was no due process requirement that the prisoner even be allowed to submit evidence or make statements at a review hearing. *See Hewitt*, 459 U.S. at 477, n. 9; *Touissaint*, 801 F.2d at 1101.

      In 1995, the Supreme Court held that segregated confinement which mirrored the conditions imposed upon inmates in administrative segregation and protective custody did not present the type of atypical and significant deprivation to equate to a state created liberty interest. *Sandin*, 515 U.S. at 472 (holding that a convicted inmate who had been placed in disciplinary segregation in a prison's SHU for 30 days had no cognizable procedural due process claim,

because he had no liberty interest in being free from such confinement).

In 1997, it was clarified that "California's policy of assigning suspected gang affiliates to the Security Housing Unit is not a disciplinary measure, but an administrative strategy designed to preserve order in the prison and protect the safety of all inmates. Although there are some minimal legal limitations . . . , the assignment of inmates within the California prisons is essentially a matter of administrative discretion." *Munoz v. Rowland*, 104 F.3d 1096, 1098 (9th Cir.1997) (citations and quotations omitted). That same year, the Ninth Circuit also held that allegations that a Plaintiff was placed in administrative segregation, without more, did not necessarily state a claim for relief based on deprivation of due process under the Fourteenth Amendment. *May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997) (holding that convicted inmate was not "denied due process when he was placed in [a Disciplinary Housing Unit] pending a disciplinary hearing. [The inmate's] due process claim fails because he has no liberty interest in freedom from state action taken within the sentence imposed, and the Ninth Circuit explicitly has found that administrative segregation falls within the terms of confinement ordinarily contemplated by a sentence.") (citation and internal quotation marks omitted).

In 2000, unless there was a clear showing of an atypical and significant hardship, a prisoner's administrative placement and retention in the SHU were "within the range of confinement to be normally expected" by prison inmates "in relation to the ordinary incidents of prison life" which did not rise to the level of deprivation of a liberty interest in being free from administrative confinement in the SHU pending disciplinary hearing. *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000) quoting *Sandin*, 515 U.S. at 486-87.

In 2003, the Ninth Circuit specifically addressed California's policy regarding initial validation, assignment, and confinement of suspected gang affiliates to the SHU and found that it was not a disciplinary measure, but an administrative strategy designed to preserve order in the prison and protect the safety of all inmates, that need only be supported by "some evidence" -- six year inactive reviews and annual reviews were not addressed. *Bruce v. Ylst*, 351 F.3d 1283, 1287 (9th Cir. 2003) citing *Toussaint v. McCarthy*, 801 F.2d 1080, 1100-01 (9th Cir. 1986) (holding that when prison officials initially determine whether a prisoner is to be segregated for

7

1    administrative reasons, due process only requires the following procedures: an informal non-
2    adversary hearing within a reasonable time after the prisoner is segregated, the prisoner must be
3    informed of the charges against him or the reasons for considering segregation, and the prisoner
4    must be allowed to present his views) abrogated in part on other grounds by *Sandin v. Conner*, 515
5    U.S. 472 (1995).

6    It was not until 2005 that the Supreme Court held that indefinite placement in Ohio's
7    "supermax" facility, which results in ineligibility for parole consideration, imposes an "atypical
8    and significant hardship within the correctional context," but this ruling again only addressed an
9    inmate's initial placement under such conditions and did not address subsequent reviews of
10   continued security housing.  *Wilkinson v. Austin*, 545 U.S. 209, 223-25 (2005).

11   It was not until 2014 that the Ninth Circuit concluded that "a lengthy confinement without
12   meaningful review may constitute atypical and significant hardship," acknowledged that the case
13   law in the circuit "has not previously so held," and found that prison officials could not be held
14   liable since there was no clearly established due process right to remain free from administrative
15   SHU placement before that date.  *Brown v. Oregon Dept. of Corrections*, 751 F.3d 983 989-990
16   (9th Cir. 2014).

17   **A.   Plaintiff Did Not Have a Clearly Established Right in 2007**

18   In 2007, it was clearly established that when prison officials initially determine whether a
19   prisoner is to be segregated for administrative reasons, due process merely required an informal
20   non-adversary hearing within a reasonable time after the prisoner is segregated, the prisoner must
21   be informed of the charges against him or the reasons for considering segregation, be allowed to
22   present his views, and that there must be "some evidence" supporting the segregation. *See Bruce*,
23   351 F.3d at 1287.

24   Plaintiff's allegations reveal that he was initially validated as an EME associate in 2000,
25   but his claims for this are no longer viable in this action.  The events surrounding his six year
26   validation review which occurred in 2006 are also no longer a part of this action.  As noted above,
27   *Bruce* did not address any due process rights to six year inactive reviews (which for Plaintiff
28   occurred in 2006), but Plaintiff's filing of this action was untimely and he is limited to only claims

8

based on events which occurred in 2007. (*See* Doc. 70.) The events that Plaintiff alleges took place in 2007 pertain to the results of Plaintiff's efforts in to challenge his six year inactive review (which occurred in 2006) and his subsequent efforts to overturn that decision and to change it apparently at an annual inactive review.

Some District Courts in this state have inferred via *Wilkinson's* rationale that because indefinite placement in California's SHU *may* render inmates ineligible for parole consideration, California prisoners *may* have a liberty interest in not being placed indefinitely in the SHU to entitle them to *Bruce's* minimal procedural protections both upon initial validation and in subsequent inactive reviews. *See Ashker v. Schwarzenegger*, 2009 WL 801557, *17-18 (N.D. Cal. 2009) (addressing evidence used in the six year review); *Garcia v. Stewart*, 2000 WL 688887, *13 (N.D. Cal. 2009); *Garcia v. Kirkland*, 2005 WL 1656904, *2-3 (N.D. Cal. 2005) (at screening prisoner was found to state a claim attacking the sufficiency of the evidence used to continue his SHU retention at his inactive reviews). However, it cannot be said that the application of any such rights to inactive revalidation reviews or annual reviews was clearly established in 2007 when the events remaining in this action occurred and the Supreme Court has very recently clarified that district court rulings do not equate to clearly established rights for the purposes of qualified immunity. *Taylor v. Barkes*, --- U.S. ---, 135 S.Ct. 2042 (June 1, 2015).

As noted above, it was not until 2014 that the Ninth Circuit concluded that "a lengthy confinement without meaningful review may constitute atypical and significant hardship," acknowledged that this circuit's case law "has not previously so held," and noted that prison officials cannot be held liable for violation of any such right prior to the date of that decision because until then, it was decidedly *not* clearly established. *Brown*, 751 F.3d at 989-990. In 2007, it was definitely not clearly established that a lengthy SHU confinement without meaningful review constituted an atypical and significant hardship. As such, it is recommended that Defendants' motion for judgment on the pleadings be GRANTED.

**VI.    Conclusion**

Accordingly, it is RECOMMENDED that Defendants' motion for judgment on the pleadings, filed on July 22, 2015 (Doc. 84), be GRANTED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **January 20, 2016**              /s/ Sheila K. Oberto
                                UNITED STATES MAGISTRATE JUDGE